NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-105-KSF

DARREN H. BEARD, SR.                                                    PLAINTIFF

VS:              **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA                                       DEFENDANT

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

This matter is before the Court on the United States' Motion to Dismiss or, in the alternative, to Enter Summary Judgment in its favor.

### BACKGROUND

This is a *pro se* prisoner civil action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2672, *et seq.*, by an individual incarcerated in the U .S. Penitentiary in Coleman, Florida.  On April 21, 2008, the Court screened the Complaint and summarized the Plaintiff's allegations of negligent care purportedly occurring during his earlier imprisonment at the Federal Medical Center ("FMC"), in Lexington, Kentucky, in the Eastern District of Kentucky.

Beard specifically complained of inadequate medical attention while he was in FMC-Lexington's Segregated Housing Unit ("SHU") in 2006.  He states that beginning in February of that year, he filed numerous requests for medical attention but was "constantly neglected" because "inmates that are in special housing are denied proper medical care unless they are dying right then."

According to the Plaintiff, at some point he developed sores on his head, but personnel would

not take this matter seriously. One physician's assistant ("P.A.") purportedly looked at his head through the bars of his cell and told him to wash his hair more. Dr. Morales did eventually come to see him and gave him antibiotic pills and cream.

On the following week-end, a cyst or boil on his back suddenly appeared and burst. Purportedly, after months of requests for medical attention, on August 10, 2006, a staff member examined Beard's back and diagnosed that "it [was] a serious infection that's been overlooked." Plaintiff received additional antibiotics, but purportedly no one knew what the infection was. The following week, a P.A. appeared and while officers held Plaintiff down, the P.A. performed a biopsy there in Beard's SHU cell, without sterile conditions. Afterwards, an SHU officer was the only one who would re-dress the area. Also, the Plaintiff complains that it was not until August 28, 2006 that two P.A.'s finally told him the results of the biopsy: it was not cancer. However, by then, Beard had allegedly developed a wound on his leg. And by September, he contends, he had "caught something in my face."

Additionally, Plaintiff claims that FMC-Lexington personnel faked his medical records in order to clear him medically for a transfer, just to get rid of him.

On July 13, 2007, from his current location in Florida, Beard filed this lawsuit, attaching a copy of the Bureau of Prison's ("BOP") response to his administrative complaint of negligent care. Via a short letter, a BOP spokesman wrote that Beard's medical records showed no BOP negligence, but instead, "a consistent pattern of non-compliance . . . with instructions to cease scratching . . . ." Beard has claimed to "still have medical problems as well mental problems where I have been constantly thinking of suicide to escape my pain and suffering." He seeks "$125,000.00 in damages or a reduce [sic] sum in the amount of $75,000.00 and immediate release (commute [sic] of

sentence)."

Noting that Beard was alleging negligence at the hands of federal defendants, the Court directed that summons issue for the United States to respond to the Complaint under the FTCA.

**DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

With the affidavit of the medical director of FMC-Lexington, Dr. Morales, and supporting medical records, the Defendant contends that the Plaintiff has failed to demonstrate any negligence on the part of any prison personnel and, therefore, his Complaint should be dismissed.

The United States begins with certain facts about the Plaintiff. As to his medical problems, Beard is described as arriving at FMC-Lexington "with diagnoses of bipolar disorder and adjustment disorder . . ." Additionally, he had a "history of chronic pain in his lower back, hip, and shoulder, . . . fitted with knee braces in 1999, . . . intermittent swelling and pain in his knees [and other joints], . . . colitis, hypertension, sleep apnea, diabetes and chronic obesity," for which he refused dietary instruction. Record No. 13, Declaration of Dr. Morales.

It is the Defendant's position that Plaintiff was adequately treated for all of these problems and those at issue herein from his 1997 arrival at FMC-Lexington to October 4, 2006, when he was transferred to his current prison assignment. To support this claim, Dr. Morales chronicles the dates when Plaintiff saw medical personnel and how each one responded to his medical complaint that day; and he also attaches medical records supporting his recitation. *Id.*; *see also* Morales's Attachment D, medical records; and Declaration of Kevin Walasinski, a BOP attorney.

With regard to the sores on Plaintiff's head, the Defendant explains that "this scalp condition is a skin problem inmates often develop. The condition will be active for awhile then become dormant. When the condition is dormant, it does not require medical attention." *Id.* at page 10. The

3

doctor attests to the repeated efforts of medical staff to provide topical and oral antibiotics beginning in May of 2006; insists that FMC's treatment was appropriate; and points out that the same treatment was continued when he arrived at his current prison location.

Defendant's position with regard to the lesion on Beard's back is similar. Dr. Morales notes that staff initially provided antibacterial cream or ointment, and when the lesion did not improve, Beard received an oral antibiotic, which also provides relief from itching. Both a culture and biopsy were performed, "which eliminated MRSA and malignancy." The doctor declares that the treatment which staff provided to Plaintiff for the boil breakout was appropriate. Additionally, it was totally effective, as Beard needed no further treatment for this problem at his new location in October.

The Defendant sets out the legal requirements for stating a negligence claim under Kentucky law, as liability under the FTCA is governed by state law. The federal government cites to well-established Kentucky and Sixth Circuit law, as well as the recent decision in *Andrew v. Begley*, 203 S.W.3d 165 (Ky.App. 2006). Additionally, the Defendant argues that since documents outside the records were provided in response to this motion, it should be treated as a Motion for Summary Judgment, and Judgment should be granted in favor of the Defendant.

**PLAINTIFF'S RESPONSE**

The Plaintiff filed documents which the Court construed as a Response to the Defendant's Motion [Record No. 21] and a later supplement [Record No. 23], which the Court has considered.

Beard first complains that he has had limited opportunity for legal research on the issues herein, because the Coleman prison was in "lockdown" for a month, from August 30, 2008 to September 23, 2008. Nonetheless, he believes that he has presented an Eighth Amendment claim of cruel and unusual punishment consistent with *Farmer v. Brennan*, 511 U.S. 825 (1994). In his

4

later supplement he presented a 6-page article on the components of such a claim and illustrative cases which purportedly support his argument.

As to other issues, Plaintiff complains of his cell assignments at FMC-Lexington, one being a dirty handicapped one and another being non-handicap-equipped.  With regard to the medical problems raised herein, he attaches copies of his  several requests for medical attention which he made at FMC-Lexington and copies of the several administrative remedies which he pursued, and he asks, "If my medical care provider . . . had seen me so many times on a regular basis, . . .  how come I have so many copies of cop-outs. . . ?"

With regard to the boil or cyst, Beard contends that when it was first examined,  a corrections officer named Stampier purportedly told him that the medical department was wrong in not doing a culture and in just putting a bandage on it; further, the officer encouraged him to file a lawsuit, as the officer himself was doing, because he and his family had been exposed to the same "Staphylococcus."  Additionally, Plaintiff writes, "The actual basis of my claim and case is that I was handcuffed in my cell in special housing . . . [and the P.A.] pulled a scalpel from his medical shirt and performed a surgical procedure on me by cutting on my wound in order to do a Biopsy on me in the cell in SHU," instead of taking him to a more sanitary environment.

Plaintiff flatly denies that a culture was performed on his scalp or that he was non-compliant in treating his boil, as he could not reach it.  He also contends that he was not educated about any treatment plan.  In support of his claims of extreme pain, Beard's final exhibits are copies of receipts for commissary purchases which include aspirin and other over-the-counter analgesics.

**REPLY**

The Defendant filed a Reply [Record No. 2], pointing out that this is an FTCA negligence case, not a Constitutional case.  Further, Beard has failed to show how any medical staff breached a duty of care which resulted in injury to him.  The Defendant urges the granting of its Motion.

**DISCUSSION**

While being treated for a number of on-going medical problems at FMC-Lexington, on February 2, 2006, the Plaintiff was placed in SHU for a disciplinary infraction; and he remained there until October 4, 2006, when he was transferred to his current BOP facility.  Beard alleges that he received negligent medical treatment for painful skin problems during this 8-month time period.  The Defendant urges dismissal of this case on the ground that Plaintiff has not and cannot demonstrate negligence in his care on the part of any medical staff member.

<u>Standards for Motion to Dismiss or Motion for Summary Judgment</u>

The standard the Defendant must meet in a Motion to Dismiss is set out in Federal Rule of Civil Procedure 12(b), which provides that prior to responding to a Complaint, a Defendant may bring a Motion to Dismiss on certain grounds listed in the Rule.  Subsection (b)(6) permits a Motion to Dismiss for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  As to appropriate grounds, *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In reviewing a Rule 12(b)(6) Motion, the High Court has directed that well pled allegations must be taken as true and must be construed most favorably toward the non-movant.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a

claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976); *see also Gazette v. City of Pontiac*, 41 F.3d 1061 (6th Cir. 1994) (affirming dismissal of a § 1983 complaint).

Rule 12(b)(6) continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id.*  Thus, the plain language of the rule requires that if the Rule 12(b)(6) motion has attachments which the Court considers, then the motion "shall" be converted into a motion for summary judgment pursuant to Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

In the case *sub judice*, the Court has considered the two declarations supplied by the Defendant and the documentary exhibits of both parties and now considers the instant Motion as a Motion for Summary Judgment.

Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007).  The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25; *see EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1093 (6th Cir. 1998). After the moving party carries its burden, the non-moving party must go beyond the pleadings to present significant probative evidence in support of the complaint by designating affidavits, depositions, answers to interrogatories, and admissions on file, which show that there is a genuine issue of material fact for trial. *Id*; *see Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Celotex,* 477 U.S. at 322-23.

<u>Constitutional Claim</u>

Plaintiff claimed negligence originally, in both his administrative FTCA claim and in his Complaint, and he now asserts a Constitutional violation. However, his exhibits show that he filed for an administrative remedy on several medical complaints via the BOP regulations, but he exhausted only one, which is not related to the medical issues herein. Further, Beard has not asked to amend his complaint to add a Constitutional claim. Even were that claim properly before the Court, Plaintiff fails to meet the high standard for stating an Eighth Amendment claim.

8

The Defendant is correct that medical malpractice or negligence is not cognizable in a civil rights lawsuit. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). The Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106. Therefore, to state a Constitutional claim the prisoner must show both "deliberate indifference" and "serious medical needs." *Id.*

To satisfy the objective component the plaintiff must allege a "sufficiently serious" medical need. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th Cir.2004) (citation omitted). With regard to the Plaintiff's boil and head sores, the Court will assume that the pain was as severe as the Plaintiff alleges.

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. Deliberate indifference has been defined as "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. at 825)).

The instant Plaintiff fails with regard to the second component, the "deliberate indifference" of a named Defendant. Liability only attaches when the plaintiff "demonstrate[s] deliberateness

9

tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (citation omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."); and *Loggins v. Franklin County, Ohio,* 2007 WL 627861, *4-*5 (6th Cir. 2007).

A plaintiff asserting a Constitutional claim must show more than medical malpractice and negligence because the subjective requirement acts to prevent the constitutionalization of medical malpractice claims. *Comstock* , 273 F.3d at 703. Additionally, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001)(quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir.1994))); *Loggins v. Franklin County, Ohio,* 2007 WL 627861 at *5.

The Plaintiff herein has failed even to allege such a culpable mental state in any of the medical staff at the prison. Among the myriad of reasons that his Eighth Amendment claim fails, is his failure to state both of the components of such a claim.

FTCA Claim

As the Court noted originally, the Plaintiff's negligence claim under the FTCA is administratively exhausted. And the subject matter herein is appropriate under the FTCA, as the Supreme Court of the United States has specifically held that the FTCA applies to federal inmates' claims alleging personal injuries sustained while incarcerated because of the negligence of

10

government employees. *See United States v. Muniz*, 374 U.S. 150 (1963).

With regard to the negligence law which is applicable under the FTCA, the Sixth Circuit has written, "As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred. 28 U.S.C. §§ 1346(b), 2674; *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991) . . . ." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995).

Accordingly, as the Plaintiff has complained of negligent medical treatment at the hands of persons at FMC-Lexington, this Court must look to Kentucky's negligence law to determine whether Plaintiff has presented the essential components of such a claim. Under Kentucky negligence law, the Plaintiff must establish the following four (4) elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997); *Ferguson v. United States Army*, 938 F.2d 55 (6th Cir. 1991) (citing *Deutsch v. Shein*, 597 S.W.2d 141, 143 (Ky. 1980)); *M&T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740 (Ky. 1975).

Generally, expert testimony is required to show that a medical provider failed to conform to the applicable standard of care and caused the plaintiff's injury. *See Vance by and through Hammons v. United States,* 90 F.3d 1145, 1148 (6th Cir. 1996); *Jarboe v. Harking,* 397 S.W.2d 775, 777-78 (Ky.1965). "The burden of proof is upon the patient to prove the negligence of the physician or surgeon, and that such negligence was the proximate cause of his injury and damages." *Andrew*, 203 S.W.3d at 170 (quoting from *Meador v. Arnold*, 94 S.W.2d 626, 631 (Ky. 1936). The need for an expert's opinion is an aspect of Kentucky medical negligence law which is crucial and fatal to the Plaintiff's cause. *See Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982).

Kentucky liberally permits the expert information to be presented in any of several ways. "[T]he necessary expert testimony may be supplied by the defendant's admissions during discovery, or through medical evidence obtained from other treating physicians." *Vance,* 90 F.3d at 1148 (citing *Perkins v. Hausladen,* 828 S.W.2d 652, 655-56 (Ky.1992)).   Further, Kentucky recognizes the common knowledge exception and will not require an expert "where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts." *Id.*; *see also Cain v. Irvin*, 286 Fed.Appx. 920 (6th Cir. 2008); *Andrew*, 203 S.W.3d at 170 (discussing two exceptions to the expert witness rule in medical malpractice cases).

In the case *sub judice*, proper treatment of the Plaintiff's head sores, boil, and other conditions is not common knowledge. *Jarboe*, 397 S.W. 2d at 778.  Yet the Plaintiff has presented no evidence of how they should have been treated.  He obviously feels that the medical professionals should have done more than they did initially, *e.g.*, giving a cream for both skin eruptions.  But he makes no case for what more the medical establishment mandates to comply with its duty of care. Despite this Court's Order advising this *pro se* Plaintiff of his need to address the issues raised in the Defendant's Motion, his Responses did not offer any controverting evidence of a different treatment being the standard of care from which the BOP's medical staff deviated.

In contrast, the United States has provided a declaration by a doctor, attesting to the appropriateness of the care given, and that expert declaration now stands uncontroverted. Additionally, the government has presented documentary medical evidence, which shows extensive attention given to Plaintiff's diagnosed conditions in the months at issue herein.  When the Plaintiff complained of each problem, the record is that a medical professional responded to each.  The treating physician then saw both outbreaks and wrote prescriptions.  When one cream did not work,

one from another class of drugs was picked.  When creams did not work alone, Plaintiff was given drugs to take orally.  Further, the medical evidence is that FMC-Lexington personnel performed both a culture and a biopsy to see if there was a serious problem needing other treatment.  As a result, one problem was resolved, but the other required continuing treatment at the Plaintiff's new institution. The medical records also show other care provided the Plaintiff during this period, including treatment for rectal bleeding, a colonoscopy, an x-ray of his spine, and optometrist visits.

Plaintiff has neither alleged nor presented any expert evidence of the standard of care for any complained-of condition or a corresponding breach of a duty of care so as to show that the treatment he received was below a stated standard.  While Beard complains of severe pain, the fact remains that the resulting pain was not caused by the treatment but the conditions themselves, conditions receiving regular attention.  His medical records show many reasons that he would need to buy analgesics.

As to the Plaintiff's statement that "the actual basis of my claim and case" is the way the P.A. obtained a specimen of material from the boil for testing, Beard also fails to state a claim.  While the Plaintiff is probably correct that the method employed in a cell in disciplinary SHU was an unusual location for this procedure, there is no evidence that an anesthetic was necessary for such a procedure, or that any other procedure would have been used in the medical unit, or that the unusual location harmed him in any way.  To the contrary, it was the boil which responded to the change to another medication afterwards such that Plaintiff required no further treatment at his new prison.

When a Defendant moves for summary judgment on the ground that the Plaintiff lacks evidence of an essential element of the Plaintiff's claim, as in the present case, Rule 56 requires the Plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue

of material fact. *Celotex Corp.,* 477 U.S. at 324. Plaintiff Beard's response falls far short of the mark, as he has not offered proof of even the first of the four requisites for a medical negligence claim, *i.e.*, the requisite standard of care.

The Court finds that Plaintiff has not set forth any evidence of a negligence claim sufficient to survive the Defendant United States' Motion for Summary Judgment. Plaintiff wholly fails to show that he can establish a negligence claim under Kentucky law. He has not shown the appropriate standard of care or a breach of any standard by guards, doctors, nurses, and/or PA's, who thereby directly caused him injury. Plaintiff fails to raise a genuine issue of material fact that negligence occurred in his last eight months of care at FMC-Lexington. His claim that staff falsified his medical records is an intentional act, if true, but it is not cognizable herein.

Therefore, it is the opinion of this Court that the United States has shown that there is an absence of evidence to support the negligence claims against it (*Celotex Corp. v. Catrett*, 477 U.S. at 324-25) and that the Plaintiff has failed to carry his burden in opposition, *i.e.*, to come forward with "affirmative evidence to defeat a properly supported motion for summary judgment" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257). The Plaintiff's conclusory statements and arguments will not defeat a motion for summary judgment. *Matsushita*, 475 U.S. at 587.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* Such is exactly the circumstance herein. This result is also consistent with the reluctance of courts to engage in second guessing the adequacy of medical care provided prisoners in every case. *Winzant v. Layne*, 657 F.2d 468, 474 (1st Cir. 1980); *Scharfenberger v. Wingo*, 542 F.2d 328, 331 (6th Cir. 1076).

**CONCLUSION**

This Court has concluded that there is an absence of a genuine issue of material fact and that the Defendant is entitled to judgment as a matter of law. *Anderson v Liberty Lobby, Inc.*, 477 U.S. at 247. Accordingly, the Court being advised, **IT IS HEREBY ORDERED** as follows:

(1)     The Defendant's Motion for Summary Judgment [Record No. 13] is **GRANTED**;

(2)     This action is **DISMISSED**, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendant.

This February 6, 2009.

**Signed By:**

**Karl S. Forester**  K S F

**United States Senior Judge**

15